377 So.2d 1271 (1979)
Doyle Wayne CRAIG, Plaintiff-Appellant,
v.
SOUTHEASTERN FIDELITY INSURANCE COMPANY et al., Defendants-Appellants-Appellees.
No. 7116.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1979.
Rehearing Denied January 15, 1980.
*1272 Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Natchitoches, Lowther & Boone, Robert C. Lowther, Many, Thomas & Dunahoe, G. F. Thomas, Jr., Natchitoches, for defendants-appellants-appellees.
E. L. Edwards, Jr., Many, for plaintiff-appellant.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
*1273 STOKER, Judge.
This is an action for damages for personal injuries sustained as a result of a collision of vehicles. Plaintiff, Doyle Wayne Craig, filed this tort action against Olan C. Holder, Jr., Marvin Sepulvado and their respective insurers, Travelers Indemnity Company and Southeastern Fidelity Insurance Company. The trial court found in favor of plaintiff, against Olan C. Holder, Jr., and his insurer, Travelers Indemnity Company, and against plaintiff in favor of Marvin Sepulvado and Southeastern.
Both Doyle Wayne Craig and Olan C. Holder, Jr., have appealed from the judgment rendered by the trial court. Plaintiff questions, without formal specification of error, the sufficiency of the award and the trial court's finding that Marvin Sepulvado was not liable in solido with Holder for those damages. The defendant Holder contends that the trial court erred in finding him negligent, and that, in fact, it was plaintiff's own negligence with that of Marvin Sepulvado which was the legal cause of the accident. The trial court found plaintiff Craig guilty of negligence as well as Holder but allowed recovery on a finding that Holder had the last clear chance to avoid the accident.
There was great conflict in the testimony given in this case by the parties and other witnesses, but basically the incident occurred as follows.
Craig, accompanied by Joseph W. Cortinez, left the San Magel Club about midnight to take Marvin Sepulvado home. Testimony indicates Craig had drunk only two cans of beer. He proceeded south on Louisiana Highway 475 and turned in the driveway in front of Sepulvado's mobile home. This is a two lane blacktop highway. It is twenty feet in width with relatively narrow shoulders that sloped into the ditch.
When Craig pulled out of Sepulvado's driveway he began to spin his rear tires in the loose gravel. His car spun around and landed in the ditch on the west side of the road, 108 feet from Sepulvado's driveway. There was conflict in the testimony as to exactly where Craig's car came to rest in relation to the highway. We feel that the evidence indicates the car was right on the edge of the hard surface of the highway with the front of the car probably extending slightly onto the blacktop. Whether the car extended onto the road does not, however, affect our decision in this case.
After skidding into the ditch Craig and his passenger Cortinez walked back to Sepulvado's house trailer to ask for his assistance. They got a chain to hook between Craig's car and Sepulvado's truck to pull Craig from the ditch. There was conflict in the testimony as to exactly where Sepulvado's truck was while Craig was preparing to hook the chain to his car. We agree with the factual finding of the trial court that Sepulvado's vehicle was not in the center of the highway. We find no negligence on the part of Sepulvado.
While all this activity was taking place defendant, Olan C. Holder, Jr., was proceeding south on Louisiana Highway 475. He testified that he had just left the Coon Ridge Lounge where he had consumed three twelve ounce cans of beer. As he topped a slight rise in the road south of Zwolle, he saw the glare of lights in the road ahead. The glare Holder saw was from the vehicle lights at the accident scene. At the scene Sepulvado's truck was in the northbound lane of travel with its lights and its emergency flashers on. Craig's car was in the ditch on the western side of the highway near the truck but with the southbound lane between them. The lights of the car were on and probably added to the illumination, even though the car was not facing Holder but was directly facing the highway or facing an angle slightly away from the oncoming Holder. (Again, the testimony is in conflict.)
At any rate, from the crest of the slight rise in the road to the accident was about 600 feet. Holder topped the hill traveling at about 55 m. p. h. Testimony of the state trooper investigating the accident revealed that the Holder truck turned from the highway onto the right shoulder about 91 feet from the accident and proceeded on the shoulder with its right wheels 2 to 2½ feet from the hard surface. Holder himself testified he was still going "between 40 to 45" when he pulled onto the shoulder.
*1274 Holder continued down the shoulder of the road. He testified that he had room to stop, but that he had no intention of stopping. He claimed to have been physically beaten in a similar situation 9 years earlier when he stopped to offer assistance to a motorist whose car was parked on the shoulder of a highway. This story was without any corroboration and is given little weight.
Holder testified that until he got past the light of Sepulvado's headlights he did not see Craig, Cortinez or the car, and that when he did, it was too late to avoid a collision. Again, there is conflicting testimony as to exactly where Craig was positioned at the time of impact, and whether he was hit by Holder's truck or his own vehicle after the truck hit it. Nevertheless, the conflict is not important because the cause of the injury can be traced to Holder's negligence.

HOLDER'S NEGLIGENCE AND LAST CLEAR CHANCE
The trial court found plaintiff was "initially negligent by operating his vehicle in such an erratic manner which placed his vehicle in an immobilized condition partially in the ditch and partially on the shoulder, just on or very near the blacktop of the highway." The trial court then pointed out the duties of a motorist under LSA-R.S. 32:414 with reference to vehicles stalled on the highway. At this point the trial court made no further analysis or conclusion as to plaintiff's negligence. In its reasons for judgment the trial court stated that it "concluded from the whole of the evidence that Holder's action was the proximate cause of the accident[,] and even assuming that Craig and Sepulvado were negligent, that Holder had the last clear chance of avoiding the accident."
We are not convinced that the facts disclose that Holder actually had a last clear chance to avoid the accident. Any questions on this issue are immaterial, however, because on a different analysis we reach the same conclusion as to Holder's liability to Craig.

CRAIG'S NEGLIGENCE
Clearly Craig was negligent in spinning out and causing his car to go out of control and into the ditch. From the train of events which followed this action, we conclude that this negligence of Craig was a cause-in-fact of the accident. Therefore, in order to determine whether these conclusions bar plaintiff's recovery on the ground of contributory negligence, further analysis is necessary. It is necessary to ascertain whether Craig's act was a breach of duty imposed to protect against the particular risk involved.
As a theory for Craig's negligence, defendant Holder and his insurer, Travelers Insurance Company, urge that Craig failed to perform the obligations required of him under LSA-R.S. 32:141. The statute reads as follows:
A. Upon any highway outside of a business or a residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park, or so leave such vehicle off such part of said highway, but in very event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic. (Emphasis Added)
Holder and Travelers urge that Craig breached his statutorily imposed duty to "protect traffic". This would require that he employ various means of warning oncoming traffic.
*1275 Did Craig breach the duty imposed by LSA-R.S. 32:141?
Unquestionably plaintiff Craig owed a duty to protect oncoming traffic. Inasmuch as the proposed method of getting Craig's car out of the ditch was to pull it by a chain hitched to Sepulvado's truck which was in the northbound lane, it would necessarily require that Craig's car be pulled across the southbound lane. Meanwhile, Craig's car was obstructing the shoulder of the highway, if not part of the highway. From start to finish Craig owed a duty to protect against hazards presented by approaching traffic. Although the flashing lights on the Sepulvado truck undoubtedly gave some warning, there is substantial question as to whether it was adequate warning under all the circumstances. We find that Craig did breach his duty to give adequate warning to approaching traffic. Nevertheless, it is necessary to answer further questions before Craig's breach of duty will bar his claim.
Was plaintiff injured as a result of being subjected to a risk sought to be avoided by imposition of the duty to protect against hazards of approaching traffic?
We do not find that Craig's negligence was a legal cause of the accident. Although Craig owed the duty to protect traffic as outlined above, the question we must determine at this point is: Was the particular risk and harm to which Craig subjected himself and others by his breach within the ambit of his duty? We think it was not. It is well settled that the statute in question is designed to protect against the hazard of confused or inattentive drivers colliding with stationary vehicles on the highways. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962) and Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1971).
The facts of this case clearly show that Holder was not a confused or inattentive driver. He observed the Sepulvado truck, its lights and its flasher. He did so from a distance of 500 feet away and reduced his speed from 55 miles per hour to 40 miles per hour. He deliberately did not reduce his speed any further. In fact, he did not intend to stop. He drove on the shoulder with the intention of continuing on the shoulder of the highway until he had passed the Sepulvado truck. However, there was actually room for Holder to have continued in his own proper lane of traffic and to have passed between the truck and Craig's car.
We are of the opinion that the duty owed by Craig did not cover the risk created by an approaching southbound driver who would choose to deliberately follow the course of conduct followed by Holder. LSA-R.S. 32:141 and the duty it imposed on Craig to protect traffic does not encompass the particular risk encountered in this case. The general circumstances of this case are analogous to those of Laird v. Travelers Insurance Co., 263 La. 199, 267 So.2d 714 (1972) which involved a daytime accident. Therefore, under the particular circumstances of this case, Craig will not be considered contributorily negligent, and will not be barred from recovering civil damages from Holder and his insurer. See Malone, Ruminations on Dixie Drive It Yourself System v. American Beverage Co., 30 La.Law Rev. 384-385.
For the foregoing reasons, we affirm the trial court's finding of liability.
Plaintiff questions the amount of the award in his brief, but he neither appealed nor answered the appeal in this regard. Therefore, he is precluded from having the judgment of the trial court modified or reversed on appeal to increase the amount of the award. LSA-C.C.P. art. 2133. Plaintiff did appeal, but the appeal was limited to an appeal from the trial court judgment rendered in favor of defendants Marvin Sepulvado and Southeastern Fidelity Insurance Company. Defendants, Holder and Travelers Indemnity Company, have also complained of the award, contending that the amount awarded is not supported by the evidence. Our review of the record discloses that the trial court's award is supported. We cannot disturb the trial court award unless the record reveals a clear abuse of discretion which we do not *1276 find present here. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.
CULPEPPER, J., concurs in the result being of the opinion that Craig, Holder and Sepulvado were negligent, that Craig can recover against Holder under the doctrine of last clear chance, but not against Sepulvado.

ON MOTION TO REDUCE SUSPENSIVE APPEAL BOND
STOKER, Judge.
This appeal came on for oral argument. Thereafter, Travelers Indemnity Insurance Company and its insured, Olan C. Holder, Jr., both defendants, filed a motion to show cause. The motion sought an order from this court permitting movers to reduce the amount of the suspensive appeal bond filed on their behalf to an amount that would cover $10,000 which is the limit of the Travelers Indemnity Company liability policy in favor of Holder. The show cause order was granted, and this issue was ordered to be submitted on written briefs. Both the plaintiff-appellant and the defendants-appellees, Marvin Sepulvado and Southeastern Fidelity Insurance Company, oppose the granting of permission to reduce the suspensive appeal bond.
The formal judgment in this case was signed on January 30, 1979. Movers were cast in judgment in favor of plaintiff, Craig, in the amount of $74,351.71. The liability of the Travelers Indemnity Company (referred to hereinafter as Travelers) was limited to $10,000 for personal injury damages. The total award of $74,351.71 included $500 for the loss or damage to plaintiff's vehicle and a wrecker charge of $40. The remaining amount of the total award arose out of plaintiff's personal injuries in general and special damages.
On February 22, 1979, movers sought and were granted an order from the trial court for a suspensive appeal, or in the alternative, a devolutive appeal. On the same day movers filed with the clerk of the trial court an appeal bond in the sum of $98,500. In the bond the Travelers Indemnity Company appears both as principal and as surety on the bond. The bond is in favor of Olan C. Holder, Jr., as a principal as well as Travelers. The bond appears to be in order, and a power of attorney is attached to it authorizing the signer of the bond to represent Travelers in such transactions. On March 1, 1979, plaintiff was granted a devolutive appeal.
The appeal bond filed appears to be in order, has never been challenged, and therefore the appeal was perfected. Under the circumstances, the jurisdiction of the trial court was divested, and the jurisdiction of this court attached. LSA-C.C.P. art. 2088. However, the trial court retains jurisdiction for several purposes spelled out under Article 2088 including the purpose stated in paragraph (5). Under paragraph (5) the trial court retains jurisdiction to "Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126." We have not found any jurisprudence in which the precise question presented here has been considered, and counsel have not cited any. We are not presented with a question of solvency of the bond. We do not consider that the mover's motion to reduce the bond is a question of form or substance of the bond. Hence, we are of the opinion that the appeal was perfected, and if there is authority for reduction of the bond it is unaffected by LSA-C.C.P. art. 2088.
In order to give movers the benefit of the doubt, we have carefully considered whether there is any authority in law to reduce an appeal bond once it has been posted so as to perfect an appeal. We have found no authority and conclude that a reduction cannot be allowed.
The motion for the rule to show cause filed by movers contains several allegations. Among them is paragraph 3 which *1277 alleges that "appellant, OLAN C. HOLDER, JR., has been unable to provide the security for the portion of the judgment exceeding the coverage provided by TRAVELERS INDEMNITY COMPANY." Insofar as the bond is concerned this is not correct. The bond posted covers both Holder and Travelers. Movers argue in their brief that certain understandings existed as between the parties to the litigation, and they attach copies of certain correspondence in support of their arguments. However, any equities or understandings which may have existed outside the record, and outside the four corners of the appeal bond filed, cannot affect the validity of the bond to the full amount posted for both defendants-appellants. Therefore, we cannot take into account such arguments of movers which might be persuasive if any discretion existed for this, or any other court in our judicial system, to exercise.
We are fortified in our finding that no authority exists to permit a reduction of the bond by LSA-C.C.P. art. 2162. This article provides that an appeal once perfected cannot be dismissed unless the appellee consents. Here all appellees vigorously oppose the motion. We view a reduction of the appeal bond to $10,000, the amount of the liability insurance, to be tantamount to a dismissal of the appeal as to Holder for the excess of the judgment for which he was cast in solido.
For the foregoing reasons the motion filed by Olan C. Holder and the Travelers Indemnity Company is denied.