405 So.2d 859 (1981)
Harry LIEDTKE, Individually and As Administrator of the Estate of His Minor Child, Randy Liedtke, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY et al., Defendants-Appellees.
No. 8258.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1981.
Rehearings Denied July 8, 1981.
On Rehearing October 7, 1981.
Writ Denied December 14, 1981.
*861 Self & Burkett, Donald M. Burkett, Many, for plaintiff-appellant.
Trimble, Randow, Smith & Wilson, Alonzo P. Wilson, Alexandria, for defendants-appellants-appellees.
Nelson & Achee, Roland Achee, Shreveport, for defendant-appellee-appellant.
Lowther & Boone, William R. Boone, Many, for defendants-appellees.
Before SWIFT, STOKER and DOUCET, JJ.
Rehearings were Denied July 8, 1981 for Allstate Insurance Company and Liedtke.
On Rehearing for Town of Many and Royal Globe Insurance, October 7, 1981.
STOKER, Judge.
Eleven year old Randy Liedtke sustained a broken leg as a result of a collision between a motorcycle he was riding and an automobile being backed into a street by Peter C. Morvan. This case presents questions of negligence on the part of Randy Liedtke, Peter C. Morvan (a minor at the time), the Town of Many, and the father of Randy Liedtke, Harry Liedtke.
Harry Liedtke brought suit, individually and as administrator of the estate of his minor son, Randy. The defendants are John Morvan, father of Peter C. Morvan, and their insurer, Allstate Insurance Company and the Town of Many and its insurer Royal Globe Insurance Company.
The accident in question occurred early in the morning on October 4, 1979, on Alieze Street in Many, Louisiana. Randy who was then eleven years old, was operating a 1979 XR Honda motorcycle and was riding south. Peter C. Morvan had spent the night at his grandmother's house on Alieze Street and was attempting to back an orange 1979 Mercury Capri into Alieze Street. Just north of the location where Peter C. Morvan attempted his backing maneuver the town had begun making a water tap and had dug a considerable amount of dirt from just beyond the west edge of the street. The dirt was being deposited in the south bound half of Alieze Street which consists of very narrow blacktop. The street has neither curbs nor any well defined edges or shoulders. It is a small residential street.
As Randy moved from the right (south bound) lane into the left (north bound) lane he passed the pile of dirt and a short distance later crashed into the rear end of the Mercury Capri which had been backed into the street by Peter C. Morvan.
Two workmen for the Town of Many were present. Otherwise, there were no eye witnesses to the accident.
After suit had been filed the Town of Many and its insurer, Royal Globe Insurance Company, filed an answer denying liability; in the alternative, a reconventional demand was filed against Harry Liedtke demanding contribution based on allegations that Harry Liedtke was negligent in permitting Randy to operate a motorcycle on the public highway of the State. These same defendants filed, in the alternative, a third party action for contribution against John Morvan and Allstate.
Through a first supplemental and amending answer, third party demand and reconventional *862 demand, the Town of Many and Royal Globe alleged that Randy Liedtke was negligent and his negligence caused the accident. Tr. 27
In answer to the incidental demand of the Town of Many and Royal Globe, John Morvan, individually and on behalf of his son, Peter Morvan, and Allstate filed an answer denying liability and denying that Peter Morvan was guilty of negligence which was a cause of the accident. The Morvans and Allstate alleged that acts of negligence of the Town of Many caused the accident. The Morvans and Allstate pleaded that both Harry Liedtke and Randy Liedtke were contributorily negligent and their negligence barred any recovery by them. These parties asserted in the alternative a third party action against the Town of Many and Royal Globe for contribution in the event of recovery by plaintiffs.
Harry Liedtke denied the allegations set forth in the incidental demands filed against him.
The case was tried before a jury which returned a verdict as indicated on the following verdict form.
 "VERDICT FORM
 "I. We, the Jury, find in favor of:
 A. Plaintiff (Randy/Harry Liedtke) yes 
 B. Defendants (Town of Many, Peter
 C. Morvan, and their Insurance
 Companies)_________________________
 (Choose one of the above)
 "If you find for the Plaintiff, Liedtke, then
 complete questions II and III. If you find for
 the defendants, stop here.
&check; "II. We, the Jury, award to the Plaintiff
 (Liedtke), including both general and
 special damages, the sum of
 $ 4,100.70 
 "III. Which of the parties were negligent?
&check; A. Town of Many Yes &check; No_____
 B. Peter Morvan Yes_____ No_____
 C. Harry Liedtke Yes_____ No_____
 Many, Sabine Parish, Louisiana, July 1, 1980.
 s/ Robert T. Graham 
 FOREMAN"

FACTS
Prior to the accident involved in this case the Town of Many had adopted the Louisiana Highway Regulatory Act, LSA-R.S. 32:1 et seq., to govern vehicular traffic within the Town of Many.
At the time of the accident Peter Morvan was seventeen years old. He spent the night before the accident at the home of his grandmother who lived on Alieze Street. He parked the vehicle he was driving, an orange 1979 Mercury Capri, on an apron of gravel or wide driveway. From the photographs in the record the parking space appears to be a graveled parking area with a culvert in the ditch. The parking area is private property off the public street.
For ease in describing the events and understanding the accident and the actions of the parties we have reproduced and made a part of this opinion photographs numbered P-1, P-2, P-5 and P-16. [See appendix.]
P-5 shows the relative position of Peter Morvan's Mercury Capri, a red Chevrolet pickup truck belonging to the Town of Many and the area at which the Town of Many was engaged in making the water tap. The machinery used by the Town of Many is shown more particularly in photographs P-1 and P-2. These photographs also show the location of the dirt pile which had resulted from digging to make the water tap. Photograph P-1 depicts the scene looking from north to south, and P-2 depicts the scene looking from south to north. In P-16, one may see a number of vehicles parked on the parking strip on the west side of the street, the first being the town's pickup truck, the second being Peter Morvan's Mercury Capri and third in line being the automobile of a relative of Peter Morvan. One may also see the opening of a culvert running underneath the parking area or driveway where Peter Morvan's Mercury Capri and the town's pickup truck were parked.
On the night before the accident Randy Liedtke spent the night with friends south of the scene of the accident. He rode his motorcycle north on Alieze Street for the purpose of taking his dog home prior to his departure for school. The Liedtke home was located at some distance north of the *863 place where the water tap was being made by the town. Randy passed this point on his northward trip and observed the two town workmen, the backhoe and the dirt in the street.
After leaving his dog at his home Randy rode his motorcycle south on Alieze Street and intended to go past the place where the dirt was piled in the street. Randy did not put his dog in his house or pen it up, and the dog apparently followed him on his return trip. The dog may be observed in photograph P-5 on the west edge of the street to the rear of the Mercury Capri and white car which is parked in the street.
When Peter Morvan came out of his grandmother's home to get into his car he noticed the water tap operation, saw the two workmen and also noticed that the town's red pickup truck was parked to his right (north). Peter was fully aware that the pickup would block his view of traffic approaching on Alieze street from the north. In fact, the family car to his left (south) also blocked his view from that direction. Nevertheless, Peter Morvan got into the Mercury Capri and attempted to back it out into the street. He testified that the truck bed completely blocked his view and he could not see the equipment of the town in the street which he had previously noted.
As Peter Morvan was backing out from the parking area Randy Liedtke was returning south on Alieze Street and collided with the extreme right rear end of the Mercury Capri. In approaching the point of impact it was necessary for Randy to go around the dirt pile which required that he move from the right hand (south bound) lane and into the left hand (north bound) lane of Alieze Street. Randy testified that, as he reached the area where the dirt was piled in the street, he thought he heard someone call to him and he looked back. When he faced forward again he was already just one foot away from the rear end of the Mercury Capri which had by then backed out into the street and was evidently beyond the center line of the street. Counsel for plaintiffs points to what appears to be a small pool of oil in the north bound lane of Alieze Street as marking the point of impact.
Although the town's equipment and the dirt pile were located in the street, both Peter Morvan and Randy Liedtke testified that they could have seen one another had it not been for the presence of the pickup truck of the Town of Many which obstructed their views. If their testimony is accepted, the presence of the town's digging equipment and dirt pile played no part in causing the accident.
The two town workmen testified they had observed Randy go north riding his motorcycle holding his dog in his arms. They heard him return and noticed that the dog was chasing the motorcycle and that Randy was looking back (or to the side) at the dog as he rode at a relatively fast rate of speed. They also observed Peter Morvan get into his Mercury Capri and start to back it. To warn Randy they began to shout and wave their arms. Randy never slowed and never applied his brakes. As he stated, he saw the Mercury Capri just before he hit it. In a deposition given by Randy, he gave the impression that he did not see the Mercury Capri at all prior to the time he collided with it. Peter Morvan apparently never saw the motorcycle prior to impact.

JURY VERDICT AND VERDICT FORM
As will be noted from the jury verdict form set forth above the jury found in favor of "Plaintiff (Randy/Harry Liedtke)". In answering the verdict form the jury awarded "Plaintiff (Liedtke), including both general and special damages, the sum of $4,100.70." The parties had stipulated that the amount of the special damages was the sum of $4,100.70. Tr. 265.
Two significant points will be noted about the answer to interrogatories given by the jury. First, the jury did not answer the questions as to whether or not Peter Morvan and Harry Liedtke were negligent. Second, the jury verdict form does not contain an interrogatory directed to the question of whether Randy Liedtke was contributorily negligent. There were no objections *864 from any party to the jury verdict form or to the form in which the jury answered it. On this appeal these difficulties have raised questions as to the jury's intentions. At least in the minds of the litigants, the results are susceptible of different interpretations. Each party, of course, insists that its interpretation represents the jury's findings.
On the basis of the verdict the trial judge gave judgment in favor of Harry Liedtke, individually and as administrator of the estate of his minor child, Randy Liedtke, and against the Town of Many and Royal Globe for $4,100.70 and for costs. Judgment was granted in favor of John Morvan individually and as administrator of the estate of his minor son, Peter Morvan and Allstate dismissing the plaintiff's demands against them. The incidental demands were dismissed.
Without discussing the various interpretations as to the intentions of the jury, we will state our findings as we make them from a reading of the record and consideration of the evidence. Although our findings differ from those of the jury in some respects, we arrive at a very similar result.
We think that the jury was clearly wrong in failing to find that Peter Morvan was negligent in attempting to back his Mercury Capri, a small car, when he was admittedly unable to see Alieze street to the north because of the high body of the truck. Both the Capri and the pickup truck were parked off the street and on private property. Under the clear law of this state Peter Morvan could not back his parked and stationary vehicle into a public street without being able to ascertain in advance that the way was clear.[1]
It is also quite clear that Randy Liedtke was contributorily negligent and that his contributory negligence was a cause of the accident. By his own account he was not looking in the direction in which he was heading as he approached the place where Peter Morvan was backing out into his path of advance. Whether Randy was actually looking at his dog as he rode along is not important. According to his own statement, he looked back when he arrived in the vicinity of the dirt pile because he thought someone called to him. Therefore, he was not keeping a proper lookout ahead as he was required to do.[2] According to the workmen, they did call to him and tried to engage his attention to warn him.
There is no evidence contrary to the opinion testimony given by Peter Morvan and Randy Liedtke that except for the parked pickup truck belonging to the Town of Many they could have seen one another. If the jury believed the town was liable only because its truck blocked Peter Morvan's vision, we would have some doubt as to the validity of their finding of liability on the part of the Town of Many. We would find it hard to approve a jury verdict of liability based solely on the fact that a vehicle parked entirely off the public street on private property blocked the vision of Peter Morvan. However, we do not know what the jury based its finding on. Despite the testimony of Peter and Randy, the jury might have found that the back hoe and dirt pile did constitute an obstruction to view. The jury might have found a violation of some other duty which was a cause of the accident, for example, the town's failure to control traffic at the point where the narrow street was half blocked. In any event, although we entertain serious doubts as to the liability of the Town of Many, we do not feel that nonliability is so manifest that we can say that the jury was clearly wrong.
Although the jury did not answer the interrogatory concerning the negligence of Harry Liedtke, we find that he was guilty of no conduct which was proven to be *865 causally related to Randy's conduct. Harry Liedtke certainly violated a statutory prohibition by allowing his unlicensed minor son to ride his motorcycle on the public street, but causal connection must be proven and the defendants failed to bear their burden of proof in this regard.[3]
Inasmuch as the jury did not answer any interrogatories finding as to the liability of Peter Morvan, Harry Liedtke or Randy Liedtke, with respect to these questions, we are perhaps not even faced with issues of manifest error and the tests for reversing a jury finding. On behalf of the Morvans it is argued that the form of Interrogatory Number III did not actually require a check of one of the blanks (yes or no) opposite the name of Peter Morvan. The interrogatory reads:
"Which of the parties were negligent?"
If this interpretation is correct and the jury did not find Peter Morvan negligent, their finding was clearly wrong and we should reverse the finding. In any event, we make no finding with respect to Harry Liedtke which is contrary to what may be an inferential finding of no negligence on his part because an award was made to him.

CONTRIBUTORY NEGLIGENCE OF RANDY LIEDTKE
The Town of Many and its insurer alleged in their answer that negligence of Randy Liedtke was a proximate cause of the accident. Although Randy's negligence was not pleaded as a bar to his recovery in the usual specific form of spelling out the defense, we think that the pleading filed put Randy through his father as his representative on notice of the assertion of the defense. Roberts v. Meche, 204 So.2d 592 (La.App. 3rd Cir. 1967) and Davis v. Meche, 204 So.2d 596 (La.App. 3rd Cir. 1967). The parties have not raised this point in this litigation. John Morvan and his insurer alleged that the negligence of Randy constituted a bar to his recovery. We are of the opinion that the contributory negligence of Randy did bar his recovery for general damages.[4]

SPECIAL DAMAGES OF HARRY LIEDTKE
With respect to the damages purportedly awarded to both Harry and his son Randy as both special and general damages the amount awarded is the amount stipulated as the medical expenses, that is, the special damages incurred by Harry Liedtke on behalf of his son, Randy. Irrespective of whatever the jury may have had in mind, the result is error. As we have indicated, Randy is not entitled to recover any general damages. John Morvan and his insurer pleaded that the negligence of Randy should be imputed to his father and we think this is correct. The Town of Many and Royal Globe take the position that the negligence of Randy is not imputable to his father and they concede in their brief that the judgment in favor of Harry Liedtke for special damages is correct. We disagree. In an answer to the appeal the Town of Many and its insurer raised specific points which they contend should be corrected on appeal, but they do not raise the issue of the right of Harry Liedtke to recover. Hence, the correctness of allowing recovery by Harry Liedtke against these particular defendants is not before us.[5] Further, as noted they concede in their brief that they do not complain of the recovery of Harry Liedtke for special damages. Under the circumstances, we will allow the jury verdict in favor of Harry Liedtke to stand for special damages. However, we must reverse the jury insofar as it granted the amount to father and son to represent both *866 general and special damages. In our opinion the amount of $4,100.70 should be awarded to Harry Liedtke alone.
These reasons for recovery by Harry Liedtke against the Town of Many and its insurer do not apply to the Morvans and Allstate. Contrary to the position of the Town of Many and Royal Globe, the Morvans and Allstate maintain that Randy's contributory negligence should be imputed to Randy's father. In this position they are correct.
In their answer to the appeal the Town of Many and Royal Globe complain of the failure of the trial court to grant them recovery on their third party demand and reconventional demand for contribution. With respect to the demand for contribution from Harry Liedtke, the reasons given for allowing him to recover against the Town of Many and Royal Globe prevent recovery of contribution from him. With respect to the third party demand for contribution against the Morvans and Allstate there can be no recovery. The answer of John Morvan and Allstate pleaded the contributory negligence of Randy Liedtke as a bar to recovery of his general damages or Harry Liedtke's special damages. The special damages of Harry Liedtke are barred because of the imputed negligence of his son Randy. For the same reasons Harry Liedtke cannot recover these special damages against the Morvans or Allstate, the Town of Many and Royal Globe cannot claim contribution from John Morvan, individually or as administrator of the estate of Peter Morvan or their insurer.
For the foregoing reasons the judgment of the trial court is affirmed in part and amended in part. The judgment is amended to reject the claim of Harry Liedtke as administrator of the estate of his minor child, Randy Liedtke. The judgment is amended to the effect that the judgment of $4,100.70 against the defendants-appellants, the Town of Many and Royal Globe Insurance Company, in solido, should run in favor of plaintiff Harry Liedtke individually together with legal interest from date of judicial demand until paid and for all costs of the proceedings in the trial court. In all other respects the judgment of the trial court is affirmed.
The costs of this appeal are assessed one-half to plaintiff-appellant Harry Liedtke and one-half to the Town of Many and its insurer.
AMENDED AND AFFIRMED AS AMENDED.

*867 
*868 

ON REHEARING
Following our decision on original hearing in this case all parties applied for a rehearing. We granted only one application, that of the Town of Many and its insurer, Royal Globe Insurance Company. The rehearing granted was limited to the following issues:
1. Whether Harry Liedtke may recover medical expenses despite contributory negligence on the part of his son, Randy Liedtke, i. e., the question of imputation.
2. Whether the Town of Many and its insurer waived any pleas or defenses of contributory negligence as to Harry Liedtke's claim for medical expenses through assertions made in brief or oral argument to the effect that a father is not barred from such recovery under Deshotel v. Travelers Indemnity Co., 257 La. 567, 243 So.2d 259 (La.1971).
3. Whether the Town of Many and its insurer brought up on appeal the right of Harry Liedtke to recover medical expenses under defenses resting on imputation of contributory negligence of Randy Liedtke.
These issues will be discussed in reverse order. As a preface we point out that as limited this rehearing is concerned principally with the question of whether plaintiff Harry Liedtke can recover the medical expenses occasioned by his son's accident. On original hearing we held that the son's contributory *869 negligence barred Harry Liedtke's recovery. Because John Morvan, Peter C. Morvan and Allstate Insurance raised this defense we allowed no recovery against them in favor of Harry Liedtke. We made a contrary disposition as to the Town of Many and Royal Globe Insurance Company. We allowed recovery against them in favor of Harry Liedtke because we understood their position to be that Harry Liedtke's recovery was not barred by Randy's contributory negligence and we interpreted this to mean that the Town of Many and Royal Globe Insurance Company were neither contesting Harry Liedtke's right to recovery nor asking for relief on appeal of the award of $4,100.70 in special damages.

I.
Did the Town of Many and its insurer (Royal Globe) bring up on appeal the right of Harry Liedtke to recover medical expenses under defenses resting on imputation of negligence or contributory negligence of Randy Liedtke?
From the standpoint of pleadings, the Town of Many and Royal Globe raised the defense of imputation of negligence as a bar to Harry Liedtke's recovery of special damages. Paragraphs 33, 34, and 35 of the original answer and amended answer unequivocally set forth this defense. Our original opinion makes no assertion that this pleading was not made and we did not rest our holding on what is in the pleadings. Hence what was set forth in the pleadings of the Town of Many and Royal Globe are not at issue with regard to whether this particular defense was brought up on appeal. Despite the assertion of the defense in the pleadings it seemed clear to us that the Town of Many and Royal Globe took an entirely different position on appeal from that which they had taken at the pleading stage.
In the course of our opinion on original hearing we said:
"The Town of Many and Royal Globe take the position that the negligence of Randy is not imputable to his father and they concede in their brief that the judgment in favor of Harry Liedtke for special damages is correct. We disagree. In an answer to the appeal the Town of Many and its insurer raised specific points which they contend should be corrected on appeal, but they do not raise the issue of the right of Harry Liedtke to recover. Hence, the correctness of allowing recovery by Harry Liedtke against these particular defendants is not before us.5 Further, as noted they concede in their brief that they do not complain of the recovery of Harry Liedtke for special damages. Under the circumstances, we will allow the jury verdict in favor of Harry Liedtke to stand for special damages.
5 Craig v. Southeastern Fidelity Insurance Company, 377 So.2d 1271 (La.App. 3rd Cir. 1979), writ denied, 381 So.2d 510 (La.1980) and Story v. Martin, 217 So.2d 758 (La.App. 4th Cir. 1969)."
In addressing the question of the scope of their appeal the Town of Many and Royal Globe urge that (1) their answer to plaintiff's appeal raised the right of Harry Liedtke to recover and (2) although their brief did not specifically assign as error the award of special damages to Harry Liedtke, assignments of error are not necessary under LSA-C.C.P. art. 2129. By giving a very broad construction to paragraph one of the answer to plaintiff's appeal it is possible to say that the Town of Many and Royal Globe appealed every aspect of the trial court's judgment. Hence we feel that this matter is open to further consideration insofar as the formal appeal is concerned.[1] The real *870 trouble is that what these parties actually complained of on appeal was indicated through what was asserted in their brief and in oral argument. Inasmuch as the parties asserted quite emphatically that Randy's negligence was not imputable to his father Harry, under Deshotel v. Travelers Indemnity Company, supra, we could only assume that recovery by Harry Liedtke was not being complained of on appeal. Failure to assign this important holding as error reinforced our interpretation of the position of the Town of Many and Royal Globe. We held accordingly.
Before proceeding further we have the following observations concerning the scope of the appeal of the Town of Many and Royal Globe as reflected in their answer to plaintiff's appeal. In this rehearing plaintiff, Harry Liedtke, has filed a brief in which he adopts our position on this question which we stated in our opinion on original hearing. Plaintiff relies also on the cases cited by us of Craig v. Southeastern Fidelity Insurance Company, 377 So.2d 1271 (La.App. 3rd Cir. 1979), writ denied, 381 So.2d 510 (La.1980) and Story v. Martin, 217 So.2d 758 (La.App. 4th Cir. 1969). As stated in the Story case, an answer to an appeal only operates as an appeal from those aspects of the judgment of which the answer complains. This construction was given to LSA-C.C.P. art. 2133.[2] This is the codal authority relied on in Craig. Under these cases a party answering an appeal limits his appeal to the demands for relief.
Despite our holding on original hearing for which we cited Craig and Story, we are willing to reconsider the matter in view of the contention by the Town of Many and Royal Globe that we misinterpreted their arguments set forth in brief and oral arguments. To do so is in the spirit of the proposition for which we need no citation that appeals are favored in law.
In examining the answer to the appeal (see quotation thereof in footnote 1) we note that paragraph one contains a general statement of complaint: "That they are aggrieved by the finding of liability and the award of damages in the above described judgment." We now choose to give this language a broad and liberal construction rather than a restrictive one. We now hold that paragraph one of the answer to the *871 appeal was sufficient to cover the question of the right of Harry Liedtke to recover including the question of the effect of the son's contributory negligence. This holding is not contra to the rulings in Craig and Story for under our present interpretation they simply are not applicable. Under our holding the Town of Many and Royal Globe have complied with LSA-C.C.P. art. 2133 in setting forth the complaint which is central to this rehearing.

II.

Did the Town of Many and its insured waive any pleas or defenses of contributory negligence as to Harry Liedtke's claim for medical expenses through assertions made in brief or oral argument to the effect that a father is not barred from such recovery under Deshotel v. Travelers Indemnity Co., 243 So.2d 259 (La.1971)?

Addressing this question the Town of Many and Royal Globe preliminarily urge two points. First they urge that under LSA-C.C.P. art. 2129 an assignment of error is not necessary for an appeal. Second, they urge that under LSA-C.C.P. art. 2164 an appellate court should render any judgment which is just, legal and proper upon the record on appeal.
On this question of waiver of defenses because of assertions made in brief and oral argument, we are not so much concerned with assignments of error as we are with the substantive heart of the position taken in the argument set forth in brief and oral argument. Counsel so forcefully argued that Deshotel allowed Harry Liedtke to recover medical expenses incurred on behalf of his son that, although we disagreed, we were convinced that the Town of Many and Royal Globe were insisting this issue was not one which was a part of their complaint on appeal. We would have disallowed the recovery in favor of Harry Liedtke against the Town of Many and Royal Globe (as we did in the case of the Morvans and their insurer) except for the fact that counsel's argument convinced us that this point was not being appealed by them. It was on the basis of our conclusion that the Town of Many and Royal Globe did not complain of and had not in fact appealed the recovery of Harry Liedtke that we allowed his recovery to stand. As our opinion on original hearing makes clear, we felt that the contributory negligence of Randy barred the recovery of his medical expenses by his father.
In the application for rehearing by the Town of Many and Royal Globe their counsel suggests that the intent of the argument presented on original hearing relative to Deshotel was not to adopt a categorical position at all. Rather, it is urged that the argument concerning the effect of Deshotel was made in presentation of alternative possibilities as to the jury's finding concerning Randy Liedtke's contributory negligence. The possibility that we had misinterpreted the arguments concerning Deshotel was a persuasive factor in prompting us to grant this limited appeal.
Counsel in this rehearing asserts that the allusion to Deshotel was made for two reasons only. The first reference to Deshotel was in connection with the jury's failure to answer whether Randy Liedtke was contributorily negligent. Counsel advises that what was meant by the discussion in the brief was that the award of the specific amount of the medical damages was consistent and correct (1) if the jury did find Randy contributorily negligent and (2) if the jury found Harry was not guilty of independent negligence (3) because the minor son's negligence would not be imputed to the father to bar his recovery under Deshotel. Counsel argues that the record amply supports a finding of contributory negligence on the part of Randy. Therefore, it is urged that awarding only the exact amount of the medical damages was proper.
Counsel urges that the second reference to Deshotel was in connection with that portion of plaintiff's appeal which sought an increase in damages. Counsel contends that for the reasons given above, the award could not go beyond the amount of the *872 special damages. The argument runs thusly: Recovery of general damages for Randy's damages for his personal injuries are barred by his contributory negligence, but his father's claim for medical expenses are not barred. Since the award must be confined to the special damages, they cannot exceed the precise amount awarded. Therefore, they cannot be increased.
In summary counsel urges that neither of the two references to Deshotel were meant as a concession that Harry Liedtke was entitled to recover at all. In the first instance it was suggested that by applying Deshotel to the facts of this case and considering the damages to have been meant for Harry Liedtke alone, the jury award would be consistent.[3] In the second instance, it was argued that only by applying Deshotel could Harry Liedtke recover any damages but those damages would be confined to the amount of the special damages.
Despite the explanations just discussed, it is clear that counsel still takes the position that Deshotel covers the facts of this case to allow a father to recover medical expenses incurred because of injury to a minor child of the father where the minor's negligence was a contributory cause of the damages. While contesting the liability on the part of the Town of Many and Royal Globe for any damages, counsel urges that this court should not impose liability on them if we hold as we did on original hearing that the negligence of Randy Liedtke should be imputed to Harry Liedtke. In this regard counsel in his brief states: "However, it is submitted that the mere fact that the Town of Many and Royal Globe argued a contrary position on an issue of law does not mean that they are bound by the proposition that they submit." These parties urge here that we apply LSA-C.C.P. art. 2164 which provides in part:
"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."
The Town of Many and Royal Globe also urge that the Louisiana Supreme Court has held that the fact of having ineffectually urged an erroneous legal proposition cannot serve as the basis of an estoppel. They cite Sandoz v. Sanders, 125 La. 396, 51 So. 436 (La.1910); Harnischfeger Sales Corporation v. Sternberg Company, 180 La. 1059, 158 So. 556 (La.1934) and Wall v. American Employers Insurance Company, 386 So.2d 79 (La.1980).
We have given careful consideration to the interpretation of the position of the Town of Many and Royal Globe which counsel urges should be given to their arguments on rehearing. While that interpretation is not easy to perceive, we accept counsel's representation as to what was intended. We hold that the Town of Many and Royal Globe did not waive any defenses of contributory negligence and that if we were correct in our original hearing, they should have the benefit of the defense in bar of Harry Liedtke's claim for special damages. While we disagreed on original hearing with counsel's position as to the effect to be given Deshotel, we felt no need to discuss the case at length. Now, however, the question has been made an issue by the plaintiff, Harry Liedtke, a party in whose interest it is most important that it be raised. In his brief on rehearing Harry Liedtke takes the position that Deshotel is authority for the proposition that a child's contributory negligence does not bar a father's claim for medical expenses. Harry Liedtke joins the Town of Many and Royal Globe in asserting that this position is supported by Scott v. Behrman, 273 So.2d 661 (La.App. 4th Cir. 1973); Traders and General Insurance Company v. Robison, 289 So.2d 178 (La.App. 1st Cir. 1973) and Callais v. Allstate Insurance Company, 334 So.2d 692 (La.1976).
Under the circumstances we now proceed to consider the substantive question of imputation *873 of negligence of a minor contributing to his injury which results in a father incurring special damages.

III.
May Harry Liedtke recover medical expenses despite contributory negligence on the part of his son, Randy Liedtke; i. e., the question of imputation?
Deshotel v. Travelers Indemnity Company, supra, decided Article 2318 of the Louisiana Civil Code was not authority for imputing negligence under the circumstances of that case. It was held that the purpose of the article was to fasten upon father (or in proper cases the mother or even a tutor) liability for the torts of their minor children. In Wooten v. Wimberly, 272 So.2d 303 (La.1973), the Louisiana Supreme Court said: "As more fully stated in Deshotel v. Travelers Indemnity Company ..., the status of the father is `vicarious, secondary and derivative'; his liability is, in reality, an absolute liability imposed by statutea liability without fault."
Nevertheless, Louisiana courts have long held that negligence of the minor bars the claim of the minor's father for medical expenses occasioned by the child's negligence as a contributing cause. LSA-C.C. art. 2318 has sometimes been given as a basis for such a recovery bar. In a 1940 case the Orleans Court of Appeal cited neither a Louisiana statutory not jurisprudential authority for a dicta statement of the proposition but relied solely on foreign authorities. In Douga v. Ancona Baking Co., 193 So. 271 (La.App.Orl.1940), an opinion written by Judge McCaleb, the court stated: "It is well settled that the contributory negligence of an injured child is a defense to an action by the parent to recover money expended for medical attendance upon the child."
Other cases ground the bar for recovery on LSA-C.C. art. 2318. DiLeo v. DuMontier, 195 So. 74 (La.App.Orl.1940); Epps v. Standard Supply Hardware Co., 4 So.2d 790 (La.App.Orl.1941); Curry v. Fendt, 94 So.2d 164 (La.App.Orl.1957); Pancoast v. Cooperative Cab Co., 37 So.2d 452 (La.App.Orl. 1948); Joffre v. Ike Haggert Machine Works, 100 So.2d 557 (La.App.Orl.1958), writ granted, April 21, 1958; Durham v. Paciera, 164 So.2d 188 (La.App. 1st Cir. 1964), writ refused, 246 La. 596, 165 So.2d 486 (La.1964). Other cases applied the rule without citation. Fontenot v. Pan American Fire & Casualty Co., 209 So.2d 105 (La.App. 3rd Cir. 1968), writ refused, 252 La. 460, 211 So.2d 328 (La.1968); La Hitte v. Acme Refrigeration Supplies, Inc., 192 So.2d 172 (La.App. 4th Cir. 1966), writ refused, 250 La. 99, 194 So.2d 98 (1967); Bonvillian v. Dauphin, 166 So.2d 40 (La.App. 4th Cir. 1964), writ refused, 246 La. 859, 167 So.2d 674 (La.1964), and Glass v. Toye Bros. Yellow Cab Co., 160 So.2d 329 (La.App. 4th Cir. 1964).
So far as we can determine the only case to consider the precise facts of this case since the Louisiana Supreme Court decided the Deshotel case is the First Circuit Court of Appeal case Gaudet v. G. D. C., Inc., 383 So.2d 1289 (La.App. 1st Cir. 1980), writ denied, 385 So.2d 256 (La.1980). This case was considered on peremptory exceptions of no cause and no right of action. The plaintiff, Dale Gaudet, sought personal injury damages for his minor son, Glenn Gaudet. The father also sought damages for the medical expenses he incurred as a result of the son's personal injuries. The allegations of the petition placed the demand for the medical expenses on an alternative basis in the event that the son should be found to have been contributorily negligent. The purpose of the exceptions were to test the right of the father to recover under the circumstances. The trial court maintained the exceptions, the First Circuit affirmed and the Louisiana Supreme Court denied writs. The result of the decision was that the father was barred from recovery by his son's negligence. The effect of the ruling in Deshotel was specifically considered by the First Circuit and it was distinguished.
The essence of the Gaudet decision and its reasoning is as follows:
"The question presented is whether a parent may recover medical expenses incurred as a result of injury to his minor child residing with him when the injury is *874 caused solely by the fault of the minor child. We hold that such a parent may not recover medical expenses.
"In LaHitte Acme Refrigeration Supplies, Inc., 192 So.2d 172 (La.App. 4 Cir. 1966), writ refused, 250 La. 99, 194 So.2d 98 (1967), the Court denied recovery to a husband (co-plaintiff) for special damages for medical expenses incurred by him as a result of his wife's injuries which were caused by the negligence of his minor son, the driver of the father's car, in a suit against the other vehicle's owner and insurer. The Court held that the son's negligence was imputed to the father so that his recovery was barred.
"In Fontenot v. Pan American Fire & Casualty Company, 209 So.2d 105 (La. App. 3 Cir. 1968), writ refused 252 La. 460, 211 So.2d 328 (1968), the Court imputed the negligence of this minor child to the father and barred his recovery individually for special damages, i. e., medical expenses, for both of his children (one of which was the driver) who were injured in the accident which was caused by the combined negligence of both drivers of the vehicles involved. See also Glass v. Toye Brothers Yellow Cab Company, 160 So.2d 329 (La.App. 4 Cir. 1964).
"We believe the rationale of the Fontenot case is dispositive of the instant case. The plaintiff herein can not recover because the negligence of the son, (presumed for purposes of this exception) is imputed to the father. The negligent operation of the automobile, which caused the injury to the minor child, precludes the father from recovering the expenses which, as a parent of the child, he was under a legal obligation to incur in the son's treatment.
"Even under the duty-risk theory, the duty of the son to operate the automobile in a non-negligent manner does not extend to the risk that the father would be obligated to pay the son's medical bills which were incurred as a result of the negligent operation. See Olinde v. American Employers Insurance Company, 376 So.2d 1027 (La.App. 1 Cir. 1979).
"The case of Deshotel v. Travelers Indemnity Company, 257 La. 567, 243 So.2d 259 (1971), relied upon by appellant, is distinguishable. There the father sued his liability insurer for personal injuries he sustained in an accident while riding in a car owned by him and driven by his minor son. The accident was caused by the negligent driving of the son.
"This situation is also distinguishable from the one in Bennett v. Employers Liability Assurance Corporation, 238 So.2d 206 (La.App. 1 Cir. 1970), affirmed, 257 La. 575, 243 So.2d 262 (1971), where the father, injured as a passenger in a vehicle negligently operated by the minor child, was not precluded from recovering for his own personal damages against the minor child's insurer.
"Accordingly, we affirm the judgment of the trial court maintaining the peremptory exceptions of American Motorists Insurance Company at appellant's costs."
As noted in Gaudet the facts of Deshotel are not the same as those in Gaudet. Here, as in Gaudet, the father seeks damages for medical expenses incurred as a result of injury to the negligent or contributory negligent minor son. In Deshotel the father was the injured party and he sought his personal damages in a direct action against the son's insurer. In Deshotel the Louisiana Supreme Court first demonstrated that LSA-C.C. art. 2318 is not a statute providing for imputation of negligence. Its purpose is to fix financial responsibility on the father.[4] In Deshotel the Supreme Court further said:
"It has also been urged that the father becomes here both debtor and creditor, and that when the qualities of debtor and creditor are united in the same person, confusion extinguishes the obligation; that where confusion takes place in the person of the principal debtor, it also *875 avails the surety. La.Civ.Code, Arts. 2217, 2218. In the instant case, under Article 2315 the debtor is the minor son, and the damage sued for is a debt due only to the father. There is one debtor, and one creditor; they are separate entities.3"
Footnote three indicated at the end of the above quoted paragraph reads:
"3. This suit does not involve a claim for a debt which could inure to the benefit of the negligent child, such as a debt for that child's medical expenses for which the father is responsible. In such a case we might be concerned with derivative negligence rather than with imputed negligence. To avoid confusion, we note that in Funderburk v. Millers Mutual Fire Insurance Company of Texas (La.App. 3rd Cir. 1969), 228 So.2d 169, the father was suing for his damages which were the medical expenses of one of his minors incurred because of the negligence of another of his minors. The principles laid down in this opinion are applicable to Funderburk and that case is specifically overruled."
As we interpret the first sentence in footnote three to Deshotel, the specific issue we have before us was left open in Deshotel. Moreover, the Supreme Court denied a writ in Gaudet which passed on the issue.[5] The Town of Many and Royal Globe appear to recognize that the issue before us was left open in Deshotel but they refer us to certain cases subsequent to Deshotel as indicating a possible answer to the issue. That answer they suggest is a rejection of the imputation of negligence theory which disallows a father's claim for medical expenses flowing from the negligence of his child.[6] Two of the cases cited to us are Scott v. Behrman, 273 So.2d 661 (La.App. 4th Cir. 1973) and Traders & General Insurance Company v. Robison, 289 So.2d 178 (La.App. 1st Cir. 1973). These cases are distinguishable from our factual situation. Both hold that a parent is not barred from recovering property damages in the form of automobile damages arising out of automobile collisions in which their minor children were driving and were at fault in causing the damages. Such damages are of the same nature as personal injury damages suffered by the parent in a Deshotel type situation. Consequently, we do not regard these cases as significant in the matter before us. They go no further than Deshotel.
The Town of Many and Royal Globe also suggest that the Louisiana Supreme Court repudiated the notion of imputed negligence on original hearing in Callais v. Allstate Insurance Company, 334 So.2d 692 (La.1978) and has further expressed its disapproval of the concept of imputed negligence in Lewis v. Till, 395 So.2d 737 (La. 1981).
In the Callais case the Supreme Court reversed itself on rehearing and laid its holding upon a duty-risk analysis. Therefore, anything said on the subject of imputed negligence in the original hearing, although not repudiated, is dicta only. In Callais on original hearing the Supreme Court held that a child could not recover damages for her father's death which resulted from his negligence. Imputed negligence was condemned. On rehearing the Supreme Court did not focus on imputed negligence. Instead it held that the death was not wrongful because a parent has no duty to protect a child against the risk of the parent's own death.
*876 Lewis v. Till, supra, held that a wife's negligence will not be imputed to the husband to bar his recovery for the death of a child of the marriage caused by the wife's negligence. Both cases indicate that imputed negligence is generally disfavored. However, that is as far as their significance goes in connection with this case because the facts are not parallel. They involve a different alignment of relational interests and implement different policy considerations. In this connection the case of Olinde v. American Employers Insurance Company, 376 So.2d 1027 (La.App. 1st Cir. 1979) critically analyzes the Callais language concerning imputed negligence. In Olinde a father was not permitted to recover for his son's death resulting from an automobile accident for which a contributory cause was the son's negligence and for which the victim assumed the risk. In Olinde, Judge Lottinger suggests policy rather than designation of a concept may be at the bottom of decisions to bar recovery or not to bar recovery by one person because of another's negligence.[7]
Undoubtedly policy underlies considerations of imputing negligence. Possibly terminology and concept designations are not the key and merely confuse appropriate resolution of given situations. It may be that use of the term or concept of "imputed negligence" in the factual situation before us is inappropriate. In Deshotel the Supreme Court held there was one debtor (the minor son) and one creditor (the father) and they were separate entities. It then observed in footnote three quoted above that:
"This suit does not involve a claim for a debt which could inure to the benefit of the negligent child, such as a debt for that child's medical expenses for which the father is responsible."
In other words, to use an illustration, in our situation involving medical expenses for Randy Liedtke, his father is responsible for the costs of the medical attention to the furnishers of the services. The obligation to pay medical expenses is not a damage inflicted directly on the father such as injury to his person or property. His debt arises only because he is the child's father and as such owes him care and also because the father contracted for the services. If the child was not a minor, the medical expenses would be his own and the father would not be concerned with them. Hence, the right of the father to recover the child's expenses rests upon the child's right to recover and may be called a derivative right. We assume this was what the Supreme Court meant in Deshotel when it said:
"In such cases we might be concerned with derivative negligence rather than with imputed negligence."
We take this to mean that the father derives his right to recover from the child and since the child could not recover because of its contributory negligence the father "derives" the contributory negligence along with it.[8]
*877 In our opinion the foregoing discussion demonstrates that ample theoretical basis exists for denying recovery by a parent for medical expenses of a child incurred in part through the contributory negligence of the child. Olinde v. American Employers Insurance Company, supra, and Gaudet v. G. D. C., Inc., supra, both decided since Deshotel and Callais, lend case authority to this proposition. If the proposition is to be changed as a matter of policy, it may be changed by the highest court of our state.[9]
In summary, we adhere to our original conclusions expressed on original hearing that plaintiff Harry Liedtke is barred under law from recovering the medical expenses occasioned by injury to his son Randy because of the latter's contributory negligence. We used the term "imputed negligence" on original hearing and that term was repeatedly used in Gaudet v. G. D. C., Inc., supra. Whether or not reliance on imputed negligence is theoretically correct, we base our holding on the following:
1. The long line of cases cited above for barring recovery in factual situations of the type under discussion have not been specifically overruled.
2. There is no jurisprudence specifically in conflict with our holding. Deshotel and other cases presenting similar facts are distinguishable.
3. Even in a wrongful death case, Olinde v. American Employers Insurance Company, supra, contributory negligence on the part of the minor victim has been held to bar recovery by parents.
For the foregoing reasons we now hold that Harry Liedtke is not entitled to recover his medical expenses arising out of Randy Liedtke's accident. We amend our decree rendered on original hearing to affirm in part and reverse in part, so as to reject all claims of plaintiff-appellant Harry Liedtke asserted individually or on behalf of Randy Liedtke. The demands against all defendants are hereby dismissed at plaintiff's costs. The costs of this appeal are assessed to plaintiff-appellant, Harry Liedtke.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] LSA-R.S. 32:103; LSA-R.S. 32:124; McGee v. United States Fidelity & Guaranty Company, 212 So.2d 465 (La.App. 3rd Cir. 1968) and Dupre v. Darbonne, 266 So.2d 553 (La.App. 3rd Cir. 1972).
[2] Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La. 1978); Green v. Texas and Pacific Railway Co., 369 So.2d 248 (La.App. 4th Cir. 1979), writ denied, 369 So.2d 1378 (La.1979) and Desselle v. State, Dept. of Public Highways, 328 So.2d 389 (La.App. 3rd Cir. 1976).
[3] LSA-R.S. 32:416 and Hartman v. Allstate Insurance Company, 284 So.2d 559 (La.1973).
[4] The evidence established that Randy was an intelligent boy whose grades in school consisted of A's and B's. With the help of a home-bound teacher and his mother's help he was able to keep up with his school work while he was out of school with his broken leg. Randy Liedtke was an active scout and at the time of the trial was within two requirements of qualification as an Eagle Scout and would soon be ready to go before the Eagle Board of Review.
[5] Craig v. Southeastern Fidelity Insurance Company, 377 So.2d 1271 (La.App. 3rd Cir. 1979), writ denied, 381 So.2d 510 (La.1980) and Story v. Martin, 217 So.2d 758 (La.App. 4th Cir. 1969).
[1] The answer to the appeal of plaintiffs filed by the Town of Many and Royal Globe reads as follows:

ANSWER TO APPEAL
"NOW INTO COURT, through undersigned counsel, comes the TOWN OF MANY, and ROYAL-GLOBE INSURANCE COMPANY, defendant-appellee-appellants in answer to the appeal filed by the plaintiff returnable to this Honorable Court in accordance with law and say:
1.
"That they are aggrieved by the finding of liability and the award of damages in the above described judgment.
2.
"That they are aggrieved by the denial of their third party demand and the denial of their petition in reconvention and in the alternative and only in the event that they are found to be in any way liable or responsible to the plaintiffs, which is denied, then they show that they are entitled to judgment on their third party demands and reconventional demands for indemnity or contribution.
"WHEREFORE, ROYAL-GLOBE INSURANCE COMPANY and THE TOWN OF MANY PRAY:
1. That the judgment in favor of the plaintiff and against appearers to be reversed and judgment be rendered in favor of appearers, denying plaintiff's demands;
2. In the alternative, and only in the event these appearers are found liable to the original plaintiff, which is denied, then there be a reversal of the judgment denying the reconventional demand and third party demands and there be judgment in favor of appearers and against defendants in reconvention and third party defendants awarding appearers indemnity or contribution;
3. That the plaintiffs, or in the alternative, defendant in reconvention and third party defendants be ordered to pay all costs of these proceedings."
[2] LSA-C.C.P. art. 2133 provides:

"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action."
[3] In truth the award was not consistent because the jury award, as forced by the verdict form furnished to the jury, was made to "Plaintiff (Randy/Harry Liedtke)", Paragraph I, and was made to "Plaintiff (Liedtke), including both general and special damages" in the sum of $4,100.70." Paragraph II, Verdict Form.
[4] In Wooten v. Wimberly, 272 So.2d 303 (La. 1973) the Louisiana Supreme Court described the responsibility arising out of Articles 237 and 2318 of the Louisiana Civil Code vicarious, secondary and derivative.
[5] A writ denial does not necessarily imply approval of the judgment of the Court of Appeal. White v. Louisiana Western Ry. Co., 174 La. 308, 140 So. 486 (La.1932). See also Lombardo v. Argonaut Insurance Co., 354 So.2d 731 (La. App. 4th Cir. 1978), writ denied, 355 So.2d 1325 (La.1978).
[6] Although the Town of Many and Royal Globe appear to be arguing against their own interests in this regard, there may be a practical reason for doing so. If their contentions should ultimately be adopted by the Louisiana Supreme Court, such a holding would be a foundation for their claims for contribution which they have asserted against Harry Liedtke, the Morvans, and Allstate Insurance Company.
[7] In Olinde v. American Employers Insurance Company, Judge Lottinger quotes extensively from an article by Professor H. Alston Johnson, III, entitled Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1 (1976).
[8] The suspect nature of the use of the term "imputed negligence" is pointed up by the following comments from 59 American Jurisprudence 2d under the topic "Parent and Child." In section 126 it is stated: "Since the parent ordinarily has no right of action unless the child has, if the child itself failed to exercise the care proper to be required of one of its age, and that lack of care contributed to the accident, the parent cannot recover .... There is some controversy as to the basis of the rule charging the parent with contributory negligence of his child and the rule has been subject to considerable criticism. The holding is based most frequently on the theoretical ground that the action arising in favor of the parent is derivative in nature and is subject to the same defenses that are available in an action arising in favor of the child. Other cases speak of the defense as one of `imputed negligence,' although this theory has been criticized upon the ground that it is properly applicable only where an agency relation, express or implied, exists." In Section 469 it is said that: "Where an action is brought by a parent for his own benefit to recover damages which he has suffered by reason of injury to his child, the plaintiff's contributory negligence, if any, bars his recovery, as does the contributory negligence of the child if the child is capable of negligence, and since the parent's right to recover in such an action is derivative, being measured by the right of the infant, it seems no more than a figure of speech to allude to imputed negligence in such cases."
[9] Consider, for example, Lewis v. Till, 395 So.2d 737 (La.1981).