COVINGTON, Chief Judge.
In this suit both the defendant uninsured motorist carrier and the plaintiff question the judgment in favor of plaintiff for 'the injuries sustained by her minor daughter after the girl exited her boyfriend’s pickup truck. Plaintiff had filed suit against the driver of the vehicle, John Reeves, his alleged insurer, and her own underin-sured/uninsured motorist benefits carrier, Hartford Insurance Company. At trial, the driver’s alleged insurer was dismissed when it was established that his policy, with a different company from the named company, had lapsed for nonpayment of premium. Judgment was cast primarily against the driver and Hartford, with a reduction in the amount of damages based on an assessment of comparative fault on the part of both plaintiff and her daughter. We reverse in part and amend the judgment for the reasons hereinafter stated and affirm.
The undisputed facts are that 16-year-old Samantha Berard, plaintiff’s daughter, was dating the 27-year-old defendant, John Reeves, despite the opposition of her mother and stepfather. On the day in question, August 18, 1986, at 5:00 or 6:00 a.m., Samantha was a passenger in Reeves’ pickup truck, ostensibly en route to Alexandria from Baton Rouge to visit Reeves’ hospitalized father. Both Reeves and Samantha admit that they were arguing from the time Samantha entered the truck until the time of the accident, and that Samantha had requested that he stop the truck three or four times so that she could get out. Reeves had done so each time, but the couple continued to argue and Samantha did not leave the truck until after they had crossed the old Mississippi River Bridge.
Testimony about the events at this point is conflicting. Both Reeves and Samantha testified that at her request, Reeves once again stopped the truck on the shoulder of Highway 190 near a fireworks stand just after crossing the bridge. Samantha got out on the driver’s side near the travel lanes, rather than on the passenger side and onto the shoulder. The couple continued to argue, then Reeves began to drive off and leave Samantha. Samantha testified that she did not remember anything after this point. Reeves testified that after he had let Samantha out on the driver’s side, he got back into the truck and took off faster than usual. Samantha was standing next to the open driver’s door, still arguing, and ran alongside when he took off. He was looking straight ahead and then he heard her scream. Reeves stopped and ran back and found Samantha lying on the side of the road.
Norman Vincent Ryan was the first person to come upon the accident scene. He testified at trial that he was the safety medical specialist for Placid Refining Company and was on his way to work that morning on Highway 190. He first saw Reeves’ truck moving ahead of him, then looked away briefly to check for merging traffic, and looked back. When he did so, he saw Samantha rolling across the road. He slammed on his brakes, and radioed the guards at Placid to call for a deputy and an ambulance. Ryan stated that the driver's door of Reeves’ truck was not open, but that the passenger’s door was.
Ryan also testified that Reeves and Samantha were [still] arguing after the accident and that he was told several stories by both of them about how the accident happened. Ryan, a certified emergency medical technician and industrial paramedic, attempted to examine Samantha to assess her injuries. As he did so, both parties *1331 gave him conflicting versions of the accident.
I was told several stories by both parties involved. Neither one of the stories matched, from one instance when I was told the story to the next. I was first told that the young lady was twenty-one years old, then two minutes later she was nineteen, and then another two minutes later she was telling me that she had run away from home and that she was fourteen or fifteen and she didn’t know how to get in touch with her parents.
Mr. Reeves told me that they had been out the night before, that they had had an argument and things just weren’t going well between the two of them.
[[Image here]]
Both of them at first said that she was not in the vehicle. At one instance he said she was trying to get in and she was caught on the mirror, and then another instance she was caught inside the door, the opened passenger door.
According to Ryan, both parties admitted to him that alcohol was involved in the accident; he detected the smell of alcohol on Samantha. She was somewhat incoherent, but since she also was in great pain, he could not determine whether her incoherence was due to the alcohol or the pain.
Ryan stated that he did not see Samantha actually exit the vehicle. When he first saw her, she was already rolling across the road.
The deposition testimony of the deputy who investigated the accident, Charles H. Collins, Jr., was introduced at trial in lieu of live testimony. Collins, a road deputy for five years with the West Baton Rouge Parish Sheriff’s Office, stated that when he arrived at the scene, he found Samantha lying on the yellow line between the shoulder and right lane of the road. He was given two different versions of the accident by Reeves, who first told him that Samantha had jumped out of the truck before he could stop completely. Shortly thereafter, Reeves told Deputy Collins that he had pulled over, she got out of the truck and they were arguing. Samantha had her hand through the door when Reeves drove off, and she fell underneath it.
The deposition testimony of Samantha’s treating physician, Dr. Larry J. Messina, also offered conflicting stories about the accident. Dr. Messina, an orthopedic surgeon, indicated that Samantha had told him first that her boyfriend had pushed her out of a pickup truck while it was moving at 45 to 50 miles an hour. Later, Samantha indicated to him that she had actually jumped out of the truck because she was upset.
Samantha was taken to the emergency room of the Baton Rouge General Hospital, and diagnosed as having unstable multiple pelvic fractures of a type referred to as a Malgaigne fracture, as well as a pneumo-thorax, or collapsed lung, a hemothorax, and a fracture dislocation of the left sacroiliac joint. During her hospitalization, there and subsequently at Our Lady of the Lake Hospital, for a total period of roughly 2½ months, she underwent multiple surgical procedures, including the insertion of pins into the bones of her leg and pelvis for stabilization and for traction.
Her primary treating physician, Dr. Messina, was unable to assign Samantha a permanent disability rating or percentage because she did not return to him for treatment after December 15, 1986. However, Dr. Clifton W. Shepherd, who saw Samantha subsequently, assigned her a 30% whole-body impairment, lifetime residual disability. He stated that Samantha’s restrictions from certain activities, such as prolonged standing, sitting, walking, or lifting heavy objects, would result from pain rather than any other cause. He also opined that the pelvic fractures were the result of a crushing injury, such as being rolled over by one of the truck’s tires.
The trial judge rendered a rather confusing judgment in favor of plaintiff individually, and on behalf of her daughter. Because it is ambiguous, we reproduce the decretal language of the judgment rather than paraphrase it:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiff, Amanda Sanford, as Tutrix of *1332 the Minor Child, Samantha Berard, and against John Reeves, in the sum of THREE HUNDRED THOUSAND AND NO/lOO ($300,000.00) DOLLARS as general damages, with legal interest thereon from date of judicial demand until paid and for all costs of court, including expert witness fees, this amount to be calculated subject to the fifty (50%) percent comparative fault of Samantha Berard thereby reducing the award of THREE HUNDRED THOUSAND AND NO/100 ($300,000.00) DOLLARS by that percentage of fault.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiff, Amanda Sanford, as Tutrix of the Minor Child, Samantha Berard, and against the defendant, Hartford Insurance Company, as the underinsured/uninsured motorist carrier, in the sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS as general damages, with legal interest thereon from date of judicial demand until paid, and for all costs of court, including expert witness fees, this amount being calculated upon the policy limits of Hartford Insurance Company in the amount of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS and as further prorated with the judgment awarded to Amanda Sanford, individually, as well as Tutrix of the Minor Child, Samantha Berard.
There being a total of SEVENTY-EIGHT THOUSAND SIX HUNDRED SIXTY-FIVE AND 82Aoo ($78,665.82) DOLLARS medical expenses due to the mother on behalf of the child, IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Amanda Sanford, individually, and against defendants, John Reeves and Hartford Insurance Company, in the full and true sum of FIFTY-FOUR THOUSAND AND 29/ioo ($54,000.29) DOLLARS, as medical expenses, with legal interest thereon from the date of judicial demand until paid, and for all costs of court, including expert witness fees, this amount to be reduced by fifty (50%) percent for the negligence of Amanda Sanford.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of intervenor, Medical Personnel Pool, and against defendants, John Reeves and Hartford Insurance Company, in the sum of TWENTY-FOUR THOUSAND, SIX HUNDRED SIXTY-FIVE DOLLARS AND 58/ioo ($24,665.53) DOLLARS, as medical expenses, with legal interest thereon from the date of judicial demand until paid, and for all costs of court, including expert witness fees, this amount to be reduced by fifty (50%) percent for the negligence of Amanda Sanford.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of third party plaintiff, Hartford Insurance Company, and against defendant, John Reeves in the sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS, together with legal interest thereon from the date of judicial demand until paid, and for all costs of court, including expert witness fees, this amount based upon the subrogation rights of Hartford Insurance Company under the terms and conditions of its insurance policy as against responsible third parties.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED the third party demand of Hartford Insurance Company against Amanda Sanford is dismissed because Mrs. Sanford’s claim has already been reduced by the imputation of fifty (50%) percent comparative negligence against her. The reduction of an additional fifty (50%) percent for the negligence of Samantha Berard, as urged by counsel, is contrary to this Court’s ruling as the claims of Amanda Sanford and Samantha Berard are independent of each other.
The above Judgment shall be entered against defendant, Hartford Insurance Company, for damages only to the extent of its policy limits, which the Court finds to be ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS, and additionally for legal interest and costs of Court, including expert witness fees.
It appears from testimony and the record that John Reeves is an insolvent tort-fea- *1333 sor. Since, in all probability each plaintiff will not recover the full amount of their judgment, the following is a guide on how the insurance proceeds should be divided amongst the plaintiffs.
Since the damages to all plaintiffs total $378,665.82, with 50% negligence attributable to each plaintiff, damages are reduced to $189,332.91. This reduced amount ($189,332.91) divided into $100,000.00 (the insurance proceeds) equates a percentage factor of .5281701. This factor is multiplied by each individual plaintiffs award of damages to determine his portion of the insurance proceeds.
The insurance proceeds should be apportioned as follows:
(1) Amanda Sanford, as Tutrix for the Minor Child, Samantha Berard is entitled to $79,225.51. (.5281701 X $150,-000.00) (her reduced amount)
(2) Amanda Sanford, individually for medical,, is entitled to $14,260.67. (.5281701 X $27,000.14) (her reduced amount)
(3) Medical Personnel Pool, as inter-venor, is entitled to $6,513.79. (.528701 X $12,332.76) (its reduced amount)
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following expert witness fees are ordered:
Dr. L.J. Messina.. .$250.00
Dr. Clifton W. Shepherd, Jr... .$250.00
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all court costs herein are assessed against the Hartford Insurance Company, John Reeves and Amanda Sanford, in solido.
In his oral reasons delivered from the bench immediately after the close of evidence, the trial judge made the following findings of fact.
The Court rules the evidence in this case does not indicate an intentional tort, which would defeat coverage.
Secondly, there was coverage under the under-insured, or what have you, under-insured motorists clause, as she lived with her mama. Samantha lived with Amanda.
Thirdly, there was negligence on the part of Mr. Reeves.
Fourthly, there was negligence on the part of Samantha, allowing herself to be put in that position on the highway, which was a dangerous position. She assumed some risk and contributed to her own accident.
Fifth, there was negligence on the part of Mrs. Sanford in allowing her daughter to consort — her underaged daughter — to consort with a man ... who was over age, and to have such freedom. Even though she tried to stop iit [sic], that doesn’t count, she should have stopped it.
[[Image here]]
[Samantha’s] negligence is fifty percent as a causation of the accident.
Mr. Reeves’ negligence was fifty percent as a causation of the accident.
Mrs. Sanford’s negligence was fifty percent as a causation of the accident. The three fifty’s need not be added together, vis a vis, Samantha against Hartford, that is, Samantha against Hartford can be added together, visa [sic] a vis Amanda against Reeves, and Samantha against Reeves and Samantha against Reeves in order to reach the amount of the uninsured motorist.
The trial judge also stated in his reasons that penalties and attorney’s fees requested by the plaintiff against Hartford for failure to pay its uninsured motorist proceeds within 60 days would be denied. He found that the conflicting stories by all parties concerned excused Hartford’s refusal to pay, since there was a question about whether Samantha’s injuries were the result of an intentional act. The judgment itself was silent on this issue, and thus the demand is considered denied.
Hartford appealed, alleging eight assignments of error. Plaintiff answered the appeal, and challenged the trial court’s denial of her demand for penalties and attorney’s fees against Hartford, as well as the finding of negligence on her part as Samantha’s mother.
*1334 I. COVERAGE UNDER HARTFORD’S POLICY
The threshold issue for us to examine regarding Hartford’s multiple assignments of error is whether the finding of coverage by the trial judge under the plaintiff’s uninsured motorist policy with Hartford was correct. Hartford argues that it was in error for two reasons: (1) Samantha was not a resident of the household at the time of the accident, and (2) her injuries were the result of her own intentional act.
Hartford bases its argument that Samantha was not residing at her mother’s and stepfather’s home on several different sources of information. Although Samantha, John Reeves, plaintiff, and her husband, Samantha’s stepfather, all claimed that Samantha was still living at home, Reeves’ alleged close friend testified differently.
Floyd S. Hanson, whose deposition testimony was offered at trial in lieu of live testimony, stated that he had known John Reeves for about nine years, and that they were good friends. According to Hanson, he and Reeves visited together four or five times a week at each other’s homes. He had known Samantha for about two years, having met her with John. His testimony was that “every time I was there, she was there; her clothes were there, and they were saying they were living together, she was living with him.” According to Hanson, Reeves and Samantha had lived together in a house on Prescott in Baton Rouge for four to six months, until the house burned down. Then Reeves moved to Melville, Louisiana, and Samantha joined him. Samantha also had clothes and possessions at the house in Melville, and Hanson testified “She was there all the time. Some of her — her clothes were there that I seen, you know, in her closet; cooking. Everything; just like living there.”
Hartford also points to the testimony of the Melville Chief of Police, Douglas N. Soileau, in support of its argument. Soi-leau stated in his deposition that on the two occasions when he went to Reeves’ house in Melville, Samantha was there and had answered the door.
Mikel Reeves, John’s brother, testified that he didn’t know whether Samantha was living with John in Melville, but that “[s]he had all her stuff there.” According to Mikel, they stayed there in Melville on and off. She stayed with him.
Finally, Hartford offered testimony and evidence concerning an admission by Samantha Berard to Opelousas General Hospital following an automobile accident in Melville. Samantha was driving a vehicle owned by John Reeves, and gave her address as General Delivery, Melville, when she arrived at the hospital.
The trial judge accepted plaintiff’s witnesses’ version, that Samantha would occasionally leave home with or without her parents’ permission and sneak away to stay with Reeves for no more than a week or so at a time, but that she resided with her mother and stepfather.
While this court might find Hartford’s witnesses to be inherently more believable and their story about where Samantha lived more plausible under the circumstances, we are constrained to follow the directions of our Supreme Court. In its recent decision, Rosell v. ESCO, 549 So.2d 840 (La.1989), the court emphasized and heightened the manifest error standard of review on appeal.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. [Citations omitted.] Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. [Citations omitted.] But where such factors are not present, and a fact- *1335 finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. [Citations omitted.]
549 So.2d at 844, 845.
The only objective or documentary evidence offered by Hartford to prove Samantha’s residence was not that of her mother’s was the hospital record from Opelou-sas General Hospital. Samantha offered an explanation for the Melville address on the hospital record which the trial judge apparently accepted. She testified that she did not want her mother to find out about that accident or the fact that she was staying with John at that time. Since both she and Reeves testified that she habitually lied to her mother, we are unable to say, under Rosell, that the trial judge was manifestly erroneous to believe this explanation, or in accepting the testimony of Samantha, Reeves, plaintiff, and plaintiff’s husband regarding Samantha’s residence. This factual finding was based on the credibility of the witnesses, as determined by the trial judge.
With regard to Hartford’s contention that Samantha’s injuries are excluded from coverage as being the result of an intentional act, rather than an accident, there is no merit to this argument. The Hartford insurance policy provides uninsured motorists coverage for bodily injury “caused by an accident.” There is no other exclusionary clause pertinent to this issue.
Hartford does not seriously contend that Reeves intentionally ran over Samantha, nor that Samantha jumped from a moving vehicle intending to injure herself. Under any theory of the accident one accepts, even the unlikely theory that Reeves pushed Samantha from the moving truck, it is not reasonable to assume that either of the parties intended any injury, serious or otherwise to Samantha. The trial judge found that both Reeves and Samantha were negligent regarding the events causing Samantha’s injury, without expressly detailing which version of the accident he accepted as true. It is unnecessary for us to make such a finding for the purpose of resolving this issue. The jurisprudence in this area clearly distinguishes between intentional acts and intentional harm. Where the act is intentional, but the damage is not, this Court has held there was no exclusion from coverage under a contract of insurance, even with an exclusionary clause with language more restrictive than Hartford’s policy. See, Kling v. Collins, 407 So.2d 478 (La.App. 1st Cir.1981). See also Redden v. Doe, 357 So.2d 632 (La.App. 1st Cir.1978), in which the Court stated that whether an injury is accidental must be determined from the victim’s standpoint where a policy of uninsured motorist coverage is concerned.
Thus, we hold that there was coverage under Hartford’s policy for Samantha’s injuries. We find no manifest error on the part of the trial judge in this regard.
II. FINDINGS OF FAULT/ALLOCATION OF FAULT
In related assignments of error, Hartford contends that the trial court erred in its factual findings and in its failure to find certain facts from the evidence presented.
First, Hartford argues the trial judge erred in finding plaintiff had proved any negligence or fault on the part of John Reeves. Correspondingly, Hartford urges that it was error for the trial court to fail to find that the most probable cause of the accident was Samantha’s jumping from the moving truck or attempting to grab it as Reeves drove off.
Beginning with Hartford’s second point first, we note that while the trial judge did not expressly state that he found version number three more likely than version four, he did state:
Fourthly, there was negligence on the part of Samantha, allowing herself to be put in that position on the highway, which was a dangerous position. She assumed some risk and contributed to her own accident.
By these statements, the trial judge indicated that he found the cause of the accident to be precisely what Hartford contends happened, that Samantha attempted *1336 to grab the vehicle as Reeves drove away. “Allowing herself to be put in that position” can only mean that the trial judge found that Samantha had voluntarily exited the truck; this phrasing would not comport with either her being pushed from the truck or with her jumping from the truck. The language used implies joint participation by Samantha and Reeves, which is exactly the construction to be placed on the version that Reeves stopped the truck so that Samantha could get out of it. “She assumed some risk and contributed to her own accident” likewise holds the inference of combined action by Samantha and Reeves. Thus, the scenario of Samantha grabbing or holding on to the truck as Reeves began to drive away is obviously the version of the accident accepted by the trial judge as the true one.
Turning to Hartford’s first point, that plaintiff failed to prove any negligence or fault on the part of John Reeves, we disagree. Samantha was 16 years old at the time of the accident. Regardless of her wishes in the matter, or how heated the argument between them became, a 27-year-old adult, as Reeves was, must be held at fault in preparing to abandon a 16-year-old minor on the shoulder of Highway 190 miles from her home. Moreover, it was negligent for Reeves to take off faster than usual, as he testified that he did, knowing that Samantha was in close proximity to the truck or touching the truck. There was no error on the part of the trial court in holding that Reeves was negligent.
Hartford next argues that if John Reeves was at fault, then there was error on the part of the trial court in its allocation of comparative fault. Since Reeves, Samantha, and Samantha’s mother were each assessed fault of 50 percent, totalling 150 percent, then obviously the trial court’s findings of comparative negligence must be examined in more detail.
Plaintiff argues that the trial judge was in error in assessing her with any fault for this accident. We agree.
The trial court stated in its oral reasons for judgment,
Fifth, there was negligence on the part of Mrs. Sanford in allowing her daughter to consort—her underaged daughter—to consort with a man ... who was over age, and to have such freedom. Even though she tried to stop iit [sic], that doesn’t count, she should have stopped it.
The record is replete with testimony and evidence indicating that plaintiff did not adequately control her daughter’s behavior. Samantha’s use of drugs, her involvement with a 27-year-old man, her dropping out of high school, her history of disappearing for several days to a week or so at a time, her professed deceptions of both her parents and her step-father, all suggest that stronger measures should have been taken in the care and supervision of this headstrong, rebellious teenager. The record does contain indications of some effort on the part of Mrs. Sanford to exercise her parental responsibility, such as calling the sheriff when Samantha had gone off with Reeves on at least a couple of instances. We do not suggest that some absolute standard of liability or even of responsibility be applied to plaintiff for her daughter’s activities. However, under the circumstances of this case, we must agree with the trial judge that reasonable precautions judged by common sense standards, [see, Argus v. Scheppegrell, 472 So.2d 573 (La.1985)] required more drastic action on plaintiff’s part.
Nonetheless, we do not find that plaintiff’s breach of parental responsibility rises to the level of fault in this incident. Under a duty/risk analysis, the risk that this particular accident would happen as a result of Mrs. Sanford’s breach of parental responsibility was not clearly within the scope of protection contemplated by her parental duties. This accident occurred because of the combined actions of Samantha and Reeves, and could have occurred in the same way had the headstrong 16-year-old girl been on an unobjectionable date with another parentally-approved 16-year-old, assuming an argument arose between the two. Therefore we hold the trial judge was in error when he found Mrs. Sanford to be 50 percent at fault in this incident. *1337 We find no fault on her part for Samantha’s accident, and reverse that finding by the trial court.
Regarding the assessment of fault for the remaining two actors, we find no error by the trial court. Although one was a minor and one was not, both parties were equally at fault in their actions immediately prior to the incident. Reeves’ negligence was discussed above; Samantha’s negligence is demonstrated not only by her act of grabbing the moving vehicle or Reeves as he began to drive off, and/or placing herself in the untenable position on the highway shoulder, but also in the evidence of drug activity by her prior to the argument. The drug screen obtained by the Baton Rouge General shortly after her arrival, routinely ordered on incoherent patients or those with suspected head injury, revealed the presence of at least six categories of drugs in her body: cannabinoids (marijuana), benzodiazepines (valium), co-caines, opiates (morphine, codeine, or heroin), phenthiazines (another type of tranquilizer), and another unidentified drug. Such reckless indulgence in such a wide array of behavior — and perception — altering drugs by this minor at some unspecified time before the accident not only arises to negligence in and of itself, but also undoubtedly was a substantial cause in the occurrence of the accident. An assessment of 50 percent of the fault for her own injuries was warranted, and we find no error by the trial judge in this regard.
III. DAMAGES
The trial judge awarded general damages of $300,000.00 to Amanda Sanford as the tutrix of her daughter, and special damages in the amount of $24,665.63 for the cost of private duty nursing while Samantha was hospitalized. Both of these amounts were to be reduced by 50 percent.
Hartford contends that the general damage award is excessive and should be reduced, and further that the special damages award should be deleted because they were necessitated by Samantha’s own misconduct in the hospital.
We have carefully reviewed the medical evidence in the record, and on this basis, we find no abuse of discretion by the trial court in its general damage award. Samantha was only 16 years old at the time of the accident. Her injuries were not only severe and extremely painful, but will have lifelong consequences in the form of a 30 percent whole body impairment or disability rating. One leg is now one and three quarter inches shorter than the other because of the disruption of the right sacroiliac joint, so that Samantha will always be subject to pain on prolonged sitting, standing, or walking, and will be unable to run. Of the four fractures of her pelvic ring, one is a non-union fracture. She also suffered a collapsed lung, which resulted in yet a third hospitalization because of the occurrence of empyema, or a collection of pus in the chest wall from the punctured lung.
Samantha was hospitalized from August 18 through October 29, 1986, some of which time she was in intensive care, and again November 4 through 10, 1986. She underwent four surgical procedures under general anesthesia, three of which were major surgeries, and was forced to undergo the insertion of pins into her bones for traction and to reduce the pelvic fractures.
We cannot say, under these circumstances, that the award of general damages was excessive. As plaintiff’s counsel also points out in his brief, awards of $200,-000.00 in general damages have been upheld previously for injuries less severe than Samantha’s or for plaintiffs with much shorter life expectancies than Samantha’s. The award was properly reduced by 50 percent for comparative fault.
As for the award in special damages, we are unable to say that this constituted an abuse of discretion. Hartford points to testimony by Samantha’s treating physician, Dr. Messina, that the private nurses were necessary mainly because Samantha was an uncooperative patient and because she had the maturity and stability of a five-year-old. Samantha would also remove her traction weights, and Dr. Messina testified that on more than one occasion, he *1338 would come in and find her boyfriend Reeves in the hospital bed with her.
Although the distinction is a fine one, we note the difference between a plaintiffs comparative fault, such as Samantha’s activities prior to the accident, and the nature of a victim in connection with recovery from the accident. That a tortfeasor (or person standing in his shoes, in Hartford’s case) takes his victim as he finds him is too well settled in our law for citation. Samantha’s various problems which affected the progress of her recovery, such as her emotional instability and immaturity, and which prevented her from appreciating the seriousness of her injury, are an added cost of her recovery that another victim might not have.
In light of our affirmation of an assessment of 50 percent comparative fault to Samantha, we find that the trial judge properly reduced the special damages award, though for different reasons. With the enactment of a comparative fault scheme by our legislature, the case cited by Hartford as authority for barring recovery for medical expenses of a contributorily negligent child by a parent, Liedtke v. Allstate Insurance Company, 405 So.2d 859 (La.App. 8 Cir.1981), writ denied, 407 So.2d 748 (La.1981), is not controlling.
IV. DISMISSAL OF HARTFORD’S CROSS CLAIM
Hartford had filed a cross claim against Amanda Sanford under a theory of subro-gation; that is, based on the allegation of Mrs. Sanford’s negligence, Hartford claimed it was entitled to recover against her as against any tortfeasor who triggers payment by an uninsured motorist carrier. The trial judge dismissed this cross claim, and Hartford appeals this dismissal.
As appellee points out in her brief, it is well settled that an insurer has no right of subrogation against an insured under its policy. Likewise, the insurer can only be subrogated to its insured’s rights against third persons. This argument has no merit.
V. PENALTIES AND ATTORNEY’S FEES
In her answer to the appeal, appel-lee also appeals the trial court’s denial of her request for penalties and attorney’s fees against Hartford for its failure to pay the proceeds of its policy within 60 days of receipt of the medical invoices. We hold that the trial court was correct in denying this request, as there was a serious question whether the Hartford policy provided coverage for Samantha in view of the conflict in testimony over Samantha’s residence and whether an intentional act was involved. These conflicts were resolved only at trial, as the trial judge recognized in his reasons.
We find no merit in this argument.
For the reasons herein, the judgment of the trial court is amended to reflect our findings of fault as follows: 50 percent fault to Samantha Berard and 50 percent fault to John Reeves. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are to be divided equally between appellee and appellant.
REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
SHORTESS, J., concurs with reasons.